UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CMH MANUFACTURING, INC., et al. )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>US GREENFIBER, LLC, )<br>    Defendant ) | CASE NO. 3:12-273<br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Motion to Dismiss filed by the Defendant US GreenFiber, LLC (DE 14). For the following reasons, the motion will be GRANTED.

**I.    Facts.**

The Plaintiffs (together, "CMH") make and sell manufactured homes. (DE 11, Complaint, ¶ 1.). The Defendant GreenFiber makes and sells home insulation, which is "any material mainly used to slow down heat flow." (DE 11, Complaint, ¶ 1; 16 C.F.R. § 460.2.) The insulating power of any particular insulation product is represented by a number called an R-value. *Mono-Therm Industries, Inc. v. F.T.C.*, 653 F.2d 1373, 1375 n.2 (10th Cir. 1981); 16 C.F.R. § 460.5. The higher the R-value, the greater the insulating power of the product. *Mono-Therm*, 653 F.2d at 1375, n.2.

Federal regulations, require loose-fill insulation sellers to place a chart on the product label showing how thick the insulation has to be installed to achieve R-values of 13, 19, 22, 30, 38, 49 and any additional R-values the seller chooses to list on the chart. 16 C.F.R. § 460.12(b)(2).

GreenFiber sold loose–fill insulation to CMH for installation in CMH's manufactured homes. Homesellers are required by federal regulations to install insulation according to the insulation manufacturer's instructions. (DE 11, Amended Complaint ¶ 24; 64 Fed. Reg. 48024, 48037 (Sept. 1, 1999).) CMH asserts that GreenFiber's product label and instruction manual misrepresented how thick the insulation had to be installed to comply with federal regulations. (DE 17, Response at 16.) CMH asserts that GreenFiber's product label and instruction manual incorrectly stated that the insulation did not have to be installed over the entire installation area to the minimum thickness required for the stated R-value. Instead, CMH asserts that GreenFiber's product label and instruction manual incorrectly stated that the federal regulations only required that the *average* thickness of the area meet the minimum thickness required for the stated R-value. (DE 11, Complaint, ¶¶ 35-38.)

The specific language that CMH points to in its Complaint is found in GreenFiber's instruction manual which states:

> The Federal Trade Commission requires that all loose fill insulation materials be applied to a minimum depth to attain a specified R-value. For example, GreenFiber Stabilized cellulose's specification for an R-30 is to install 29.9 bags every 1000 square feet to a minimum depth of 8.1 inches.
>
> Continuing with the R-30 example, an interpretation might be that the depth can never be lower than 8.1 inches in an attic. That is not what is being asked of an applicator. Both the insulation industry and FTC recognize that loose fill materials will never be installed to a perfectly even depth. Requiring that no area is less than 8.1 inches actually results in an R-value higher than R-30 and a higher installed cost for the applicator.

(DE 11, Amended Complaint ¶ 37.)

CMH asserts that in December 2000, the FTC informed GreenFiber that no area covered with insulation may be less than the minimum thickness required to attain the specified R-value. (DE 11, Complaint, ¶ 35.)

In 2008, a group of CMH's home buyers initiated a class-action arbitration against CMH claiming that the insulation installed by CMH in their homes did not meet the R-value claimed by CMH because the thickness of the insulation in some areas of the attic cavity was less than the minimum thickness necessary to achieve that R-value. (DE 11, Complaint, ¶ 1; DE 17-2, Class-Action Complaint, CM-ECF p.23.)

CMH settled the arbitration action by paying the class a certain sum. (DE 11 Complaint, ¶ 1.) With this action, CMH seeks to recover from Greenfiber the amounts it paid to defend and settle the arbitration action. (DE 11, Complaint, ¶ 1.) CMH asserts a claim of false advertising under § 43(a) of the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1125(a)(1)(B). CMH also asserts state-law claims of fraud, breach of warranty, contractual indemnity, common-law indemnity, and breach of contract against GreenFiber. GreenFiber moves to dismiss the claims against it.

**II.    Analysis.**

A complaint only survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *In re Harchar*, 694 F.3d 639, 644 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 677).

### A. Lanham Act.

The Lanham Act was intended to make "actionable the . . . deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition." 15 U.S.C. § 1127. Section 43(a) of the Act prohibits anyone from using "in commerce any. . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B).

CMH argues that GreenFiber violated this provision by stating incorrectly in the instruction manual and on its product packaging that the applicable federal regulations did not require CMH to install its loose-fill insulation at the minimum thickness for the stated R-value over the entire insulation area. This claim fails for two reasons.

First, the alleged misrepresentation is not the kind prohibited by the Act. The Act prohibits an advertisement or promotion that "misrepresents the nature, characteristics, qualities, or geographic origin of [a person's] or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). CMH does not allege that GreenFiber misrepresented the nature, characteristics, qualities or origins of its insulation. Instead, it alleges that GreenFiber misrepresented the federal regulations governing how the insulation should be installed. This is not the kind of misrepresentation prohibited by the Act.

Second, the Lanham Act claim is barred by the applicable statute of limitations. Because the Lanham Act does not contain a statute of limitations, courts use the doctrine

4

of laches to determine whether a Lanham Act claim should be barred. *Audi AG v. D'Amato*, 469 F3d 534, 545 (6th Cir. 2006). Under the doctrine of laches, a claim is barred if there was an unreasonable delay by the plaintiff in filing the claim that materially prejudices the defendant. *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 569 (6th Cir. 2000). Courts look to the analogous state statute of limitations and a claim is presumed to be barred after that time has run. *Johnny's Fine Foods, Inc. v. Johnny's Inc.*, 286 F. Supp.2d 876, 881 (M.D. Tenn. 2003) (quoting *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365, 366 (6th Cir. 1985)).

There is no dispute in this case that Tennessee law is the applicable state law. Claims under 15 U.S.C. § 1125(a) are governed by the one-year statute of limitations provided by the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47–18–110. *Id.* (citing *Federal Express Corp. v. U.S.P.S.*, 75 F. Supp. 2d 807, 816 (W.D. Tenn. 1999)).

"Although state law sets the length of the statute of limitations, 'federal law' establishes when the 'statute of limitations begins to run.'" *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 272 (6th Cir. 2012) (quoting *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010)). Under federal law, the statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Id*.

The latest date that CMH had reason to know of its injury was October 31, 2008 when the class plaintiffs filed a class action against it. (DE 11, Complaint ¶ 1; DE 17, Response at 3.) CMH did not bring this action until June 8, 2012. CMH argues that the

limitations period should be tolled because GreenFiber executives asserted even after the class-action complaint was filed that GreenFiber's instruction manual was accurate. "When the statute of limitations is borrowed from state law, so too are the state's tolling provisions, except when they are 'inconsistent with the federal policy underlying the cause of action under consideration.'" *Bishop v. Children's Ctr. for Dev. Enrichment*, 618 F.3d 533, 537 (6th Cir. 2010) (quoting *Bd. of Regents v. Tomanio*, 446 U.S. 478, 485 (1980)).

Under Tennessee law, a defendant's fraudulent concealment of facts giving rise to the plaintiff's cause of action tolls the statute of limitations until the plaintiff discovers the defendant's fraud. *Vance v. Schulder*, 547 S.W.2d 927, 930 (1977). Fraudulent concealment tolls the statute of limitations only when the defendant concealed the existence of the plaintiff's cause of action and the plaintiff "could not have discovered his cause of action despite exercising reasonable diligence." *Id*. "Mere ignorance and failure of the plaintiff to discover the existence of a cause of action is not sufficient to toll the running of the statute of limitations." *Id*.

CMH could have discovered its cause of action against GreenFiber at the time the class-action complaint was filed if it had exercised reasonable care and diligence. The class-action complaint explicitly states:

> In December 2000, FTC staff issued a public letter stating that averaging insulation depths to determine R-Value violates FTC regulations, including 16 C.F.R. § 46.01, *et seq.* This December 2000 letter stated that FTC regulations require "the installation of loose-fill insulation at or above the required minimum settled thickness at every location" and that the "minimum thickness labeling requirement. . . [does not] provide[] loose-fill installers with the discretion to leave some areas at less than minimum settled thickness and then average the overall thickness as a means to yield the appropriate R-Value."

6

(DE 17-2, CM-ECF p. 28.)

By at least that point, CMH was on notice that GreenFiber's instruction manual had incorrectly explained the federal regulations governing the installation of insulation. With reasonable care and diligence, CMH should have been able to determine what the applicable federal regulations required regardless of what GreenFiber executives were saying.

Accordingly, there is a strong presumption that CMH's delay in bringing this action was both prejudicial and unreasonable. *See Narton Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 409 (6th Cir. 2002); *Tandy*, 769 F.3d at 366. CMH has not put forth any cause for its delay in bringing this action or presented any argument to rebut the presumption that its delay was unreasonable and prejudicial.

For these reasons, CMH's Lanham Act claim will be dismissed.

### B.      State-law Fraud.

CMH's fraud claim is similarly barred by the Tennessee statute of limitations. In Tennessee, the statute of limitations for fraud is three years. *Vance*, 547 S.W.2d at 933; *Med. Educ. Assistance Corp. v. State ex rel. E. Tenn. State Univ. Quillen Coll. of Med.*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999); *American Fidelity Fire Ins. Co. v. Tucker*, 671 S.W.2d 837, 841 (Tenn. App. 1983); T.C.A. § 28-3-105 (1980). A fraud claim accrues "at the time the injury occurs, or when it is discovered, or when in the exercise of reasonable care and diligence the injury should have been discovered." *Prescott v. Adams*, 627 S.W.2d 134, 138 (Tenn. Ct. App. 1981).

Again, the latest date that CMH had reason to know of its injury was October 31, 2008 when the class plaintiffs filed their action against it. CMH did not bring this action

7

Case 3:12-cv-00273-KC-CCS   Document 37   Filed 07/01/13   Page 7 of 13   PageID #: 301

until June 8, 2012. For the reasons stated above, CMH cannot establish that it could not have discovered its cause of action against GreenFiber at the time the class-action complaint was filed if it had exercised reasonable care and diligence.

### C. Contractual Claims.

CMH asserts state-law claims of breach of contract, breach of warranty, and contractual indemnity against GreenFiber. All of these claims assert that GreenFiber violated the standard warranty agreement between the parties. The relevant provisions of the agreement are not ambiguous and CMH has presented no argument that they are.

With the agreement, GreenFiber agreed to indemnify CMH if the warranties or representations it made in the warranty agreement proved to be untrue. The provision reads as follows:

> WHEREAS, [GreenFiber] agrees to defend, indemnify, and hold harmless [CMH] . . . against any loss, demand, judgment, action, suit, and/or third party claim, including legal fees and any other applicable fees . . . incurred or sustained by [CMH] . . . as a result of [CMH's] use of said [insulation] *in the event that any of the warranties or representations made herein by [GreenFiber]* prove to be untrue or misrepresented to [CMH] in any form.

(DE 17-2, CM-ECF p. 2) (emphasis added.)

The next issue is what warranties or representations GreenFiber made in the agreement. GreenFiber warrants that the insulation "meets and is certified in accordance with third party inspection and will be free of defects in material or workmanship in accordance with manufacture warranty effective from the date of retail sold." GreenFiber further warrants that the insulation is "fit for the particular purpose for which supplier understands Clayton has purchased said product." (DE 17, Response, Ex. 2, CM-ECF p. 2.)

8

CMH does not claim that the insulation was not actually certified in accordance with third-party inspection, that there was any defect in the material or workmanship of the insulation, or that the insulation was not fit for its intended purpose. Instead it claims that GreenFiber incorrectly instructed it as to how the insulation should be installed under the applicable federal regulations. Any damages resulting from the incorrect instructions are not covered under the warranty. In fact, the warranty agreement expressly states that "this warranty does not cover damage resulting from . . . improper installation . . . . " (DE 17-2, CM-ECF p. 2.)

For these reasons, CMH's breach of contract, breach of warranty, and contractual indemnification claims will be dismissed.

### D. Common-law Indemnity

Finally, CMH asserts a common-law indemnity claim against GreenFiber. In its response to the motion to dismiss, CMH makes clear that it does not assert a contribution claim. Instead, it asserts only an indemnification claim. (DE 17, Response at 10-12.) In addressing this claim, it is instructive to delineate the three sources of an indemnification obligation.

The first such source is an express indemnification agreement between the parties. As discussed, in this case such an agreement existed. Specifically, GreenFiber explicitly agreed to indemnify CMH for any "loss demand, judgment, action, suit, and/or third party claim. . . as a result of [CMH's] use of said product in the event that any of the warranties or representations made herein by [GreenFiber] prove to be untrue or misrepresented to [CMH] in any form." (DE 17-2, CM-ECF p. 2.) As further discussed

9

above, the indemnification agreement between the parties does not cover a claim against CMH for installing the insulation incorrectly.

A second source of an indemnification obligation is an implied contractual indemnity, also known as implied-in-fact indemnity. *Stiver Marketing, Inc. v. Performance Business Forms, Inc.*, No. 01-A-019108CH00276, 1991 WL 254564, at *4 (Tenn. Ct. App. 1991). It arises from the "contractual or legal relationship of the parties." *Time & Sec. Management, Inc. v. Pittway Corp.*, 422 F. Supp. 2d 907, 914 (W.D. Tenn. 2006). It can arise from "warranties and covenants, or be otherwise implied from unique special factors indicating the parties' intent that the party from whom indemnity is sought be ultimately liable." *Stiver*, 1991 WL 254564, at *4.

As to the kind of contractual relationship that gives rise to an implied indemnity obligation, when a contract between the parties is silent as to indemnification, "an obligation may be imposed where the party from whom indemnity is sought breached a contract or engaged in tortious conduct in performance of contractual obligations." *Time & Sec. Management,* 422 F. Supp. 2d at 914. As to the kind of legal relationship giving rise to an implied obligation to indemnify, "a principle, held liable for the negligent acts of its agent solely because of their legal relationship, has an implied right to indemnity against the negligent agent." *Id*. This kind of indemnity is frequently applied to permit an employer to sue his employee for indemnification where the employer has paid a third party to compensate for damages caused by an employee's actions. *Stiver*, 1991 WL 254564, at *3.

CMH and GreenFiber do not have a principal-agent legal relationship pursuant to which CMH is legally liable for the negligent acts of GreenFiber. Instead, they have a

10

contractual relationship and there was an express indemnification agreement between them. In such cases, the Court cannot find that the parties also had an implied agreement because "[a] contract cannot be implied . . . where a valid contract exists on the same subject matter." *Jaffe v. Bolton*, 817 S.W.2d 19, 26 (Tenn. Ct. App. 1991); *Thompson v. American General Life and Acc. Ins. Co.*, 404 F. Supp. 2d 1023, 1029 (M.D. Tenn. 2005). *See also* 42 C.J.S. Indemnity § 31 ("Moreover, the law will not imply a right of indemnity where the parties have entered into a written contract with express indemnification provisions."). The express indemnification agreement embodies the parties' mutual understanding regarding GreenFiber's obligation to indemnify CMH.

In its Complaint, CMH does not label its indemnification claim as implied-in-fact or implied contractual indemnity. It labels its claim as "common-law indemnity." This third source of indemnification obligation is also referred to as implied-in-law indemnity and applies where "justice and fairness demand that the burden of paying the loss be shifted to the party whose fault or responsibility is qualitatively different from the other parties." *Time & Sec. Management, Inc.*, 422 F. Supp. 2d. at 914.

This kind of indemnification obligation, however, is no longer recognized under Tennessee law. This is because it "contemplated comparison of fault among joint tortfeasors and held that a tortfeasor guilty of only 'passive' negligence could recover from a tortfeasor guilty of 'active' negligence." *Id*. After adopting the principles of comparative fault, the Tennessee Supreme Court held that "there can be no claim for indemnification based on active-passive negligence because that distinction is subsumed into the doctrine of comparative fault." *Owens v. Truckstops of America*, 915 S.W.2d 420, 434 (Tenn. 1996).

Furthermore, this kind of indemnification would not be available to CMH. "Under Tennessee law passive as opposed to active negligence exists where the indemnitee fails to discover or remedy the negligence of the indemnitor." *Paynter v. Chrysler Corp.*, No. 3-86-515, 1987 WL 7839, at *1 (E.D. Tenn. 1987) (citing *Velsicol Chemical Corp. v. Rowe*, 543 S.W.2d 337, 339 (Tenn. 1976)).

The class-action plaintiffs alleged that CMH harmed them by intentional acts taken by CMH itself. They did not assert a negligence claim against CMH at all. Instead, they asserted that CMH violated RICO, breached express and implied warranties, violated the Magnuson-Moss Warranty Act, committed intentional fraud, breached the contract between the parties, and was unjustly enriched. They alleged that *CMH* misrepresented the R-Value of the insulation in their homes; that *CMH* incorrectly installed the insulation; and that CMH incorrectly calculated the R-value of the insulation.

Accordingly, even if a party who is passively negligent were entitled to indemnity from a party who was actively negligent under Tennessee law, CMH would not be entitled to such indemnity here.

For these reasons, CMH's common-law indemnity claim must be dismissed.

### III. Conclusion.

For all these reasons, the Court hereby ORDERS as follows:

1) GreenFiber's Motion to Dismiss (DE 14) is GRANTED;

2) CMH's Motion for Scheduling Order and Relief from Rule 26(d) is DENIED as moot; and

3) Judgment will be entered in accordance with this Opinion and Order.

Dated this 1st day of July, 2013.



Signed By:
Karen K. Caldwell   KKC
United States District Judge