UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
**AT KNOXVILLE**

| CMH MANUFACTURING, INC., et al. | ) |
| Plaintiff, | ) |
| | ) CASE NO. 3:12-273 |
| v. | ) |
| | ) |
| | ) **OPINION AND ORDER** |
| US GREENFIBER, LLC, | ) |
| Defendant | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on the Plaintiffs' motion to reconsider (DE 39). With their motion, the Plaintiffs ask the Court to reconsider its Opinion and Order dated July 1, 2013 (DE 37, Opinion and Order) by which it dismissed all of the Plaintiffs' claims.

The issue on this motion and the motion to dismiss is not whether the Defendant, US GreenFiber, LLC, made certain misrepresentations. The Court has assumed that it did. The issues are whether the misrepresentations are the kind prohibited by the Lanham Act; whether the fraud claims are timely made; and whether the misrepresentations constitute a breach of the Warranty Agreement between the parties. Because the answer to all of these questions is "no," the Plaintiffs' claims must be dismissed. Accordingly, for the following reasons and those stated in the court's July 1, 2013 Opinion and Order, the motion to reconsider will be denied.

I.  Facts

The Court set forth the relevant facts in its opinion on the motion to dismiss. For purposes of this motion, the Court notes that the Plaintiffs (together, "CMH")

make and sell manufactured homes. (DE 11, Amended Complaint, ¶ 1.) GreenFiber sold loose-fill insulation to CMH for installation in CMH's manufactured homes. CMH asserts that GreenFiber misrepresented how thick the FTC required that the insulation be installed. (DE 17, Response at 16.)

Insulating power is represented by a number called an R-value. *Mono-Therm Industries, Inc. v. F.T.C.*, 653 F.2d 1373, 1375 n.2 (10th Cir. 1981); 16 C.F.R. § 460.5. The higher the R-value, the greater the insulating power. *Mono-Therm*, 653 F.2d at 1375, n.2. The Federal Trade Commission requires that insulation manufacturers label insulation with various information including a chart showing the minimum thickness at which the insulation has to be installed to achieve particular R-values ranging from 13 to 49. 16 C.F.R. § 460.12(b)(2).

In 2008, a group of CMH's home buyers initiated a class-action arbitration against CMH claiming that the insulation installed by CMH in their homes did not meet the R-value claimed by CMH because the thickness of the insulation in some areas of the attic cavity was less than the minimum thickness necessary to achieve that R-value. (DE 11, Complaint, ¶ 1; DE 17-2, Class-Action Complaint, CM-ECF p.23.)

CMH settled the arbitration action by paying the class a certain sum. (DE 11 Complaint, ¶ 1.) With this action, CMH seeks to recover from GreenFiber the amounts it paid to defend and settle the arbitration action. (DE 11, Complaint, ¶ 1.) CMH asserts a claim of false advertising under § 43(a) of the Trademark Act of 1946 ("Lanham Act"), 15 U.S.C. § 1125(a)(1)(B). CMH also asserts state-law claims of fraud, breach of warranty, contractual indemnity, common-law indemnity, and breach of contract against GreenFiber.

2

By its prior opinion, the Court dismissed all of these claims. With its motion to reconsider, CMH moves the Court to reconsider the dismissal of each claim except the common-law indemnity claim.

## II. Analysis

### A. The Lanham Act and fraud claims

In its opinion on the motion to dismiss, the Court determined that the misrepresentation alleged by CMH was not the kind of misrepresentation prohibited by the Lanham Act. The Lanham Act prohibits an advertisement or promotion that "misrepresents the nature, characteristics, qualities, or geographic origin of [a person's] or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(B). The Court determined that CMH "alleges that GreenFiber misrepresented the federal regulations governing how the insulation should be installed." (DE 37, Opinion at CM-ECF p. 4.) In its motion to reconsider, CMH argues that it is in fact alleging that that GreenFiber misrepresented the characteristics or quality of its insulation.

CMH's Amended Complaint alleges that "Defendant falsely represented to Plaintiffs . . . that [Plaintiffs] are not required to install the insulation to a minimum depth in every area of the attic cavity." (DE 11, Amended Complaint ¶ 37.)

CMH asserts that this representation was contained in the Defendant's instruction manual which stated the following:

> **Minimum Depth and R-Value**
> The Federal Trade Commission requires that all loose fill insulation materials be applied to a minimum depth to attain a specified R-value. For example, GreenFiber Stabilized cellulose's specifications for an R-30 is to install 29.9 bags every 1000 square feet to a *minimum depth of 8.1 inches.*
>
> Continuing with the R-30 example, an interpretation might be that the depth can never be lower than 8.1 inches in an attic. That is *not*

3

Case 3:12-cv-00273-KC-CCS   Document 48   Filed 03/24/14   Page 3 of 10   PageID #: 434

what is being asked of an applicator. Both the insulation industry and FTC recognize that loose fill materials will never be installed to a perfectly even depth. Requiring that no area is less than 8.1 inches actually results in an R-value higher than R-30 and a higher installed cost for the applicator.

(DE 11, Amended Complaint ¶ 37.)

CMH states that GreenFiber learned the representation was false in 2000 when it inquired with the FTC as to "whether the thickness of loose-fill insulation has to be at or above the required minimum thickness at every location (*i.e.,* no area covered with insulation may be less than the minimum thickness that is indicated on the insulation manufacturer's coverage chart)" to comply with the FTC's labeling rules. The FTC responded that "the minimum thickness labeling requirement (16 C.F.R. § 460.12(b)(2) & (3)) [does not] provide loose-fill installers with the discretion to leave some areas at less than minimum settled thickness and then average the overall thickness as a means to yield the appropriate R-value." (DE 11, Amended Complaint ¶ 35.)

Thus, as the Court found in its prior opinion, CMH alleges that the GreenFiber misrepresented the FTC's requirements regarding the amount of loose-fill insulation that has to be installed to achieve the R-values set forth on every insulation product label. This is not a misrepresentation about the "the nature, characteristics, qualities, or geographic origin of" GreenFiber's particular insulation. It is a misrepresentation about the FTC's industry-wide requirements regarding the installation of all loose-fill insulation. While this is most certainly a misrepresentation, it is not the kind of misrepresentation prohibited under the Lanham Act.

But even if CMH did allege that GreenFiber's misrepresentations were about the character or quality of its insulation, CMH makes its claim too late. The Court's

4

full legal analysis on this issue is set forth in its prior opinion. In short, the Court determined that CMH's Lanham Act claim was barred by the doctrine of laches. In its motion to reconsider, CMH argues that it should be permitted discovery on GreenFiber's laches defense. The Court recognizes that a laches defense may generally present factual issues requiring discovery. Here, however, CMH's complaint affirmatively pleads the facts that make clear the claim is barred.

For purposes of this motion, the Court briefly notes that claims under 15 U.S.C. § 1125(a) are governed by the one-year statute of limitations provided by the Tennessee Consumer Protection Act. That limitations period begins to run when the plaintiff knows or has reason to know of the injury and he has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984).

There can be no dispute that CMH had reason to know of its injury on October 31, 2008, the date the class-action was filed.

The class-action complaint explicitly set forth the FTC's requirements regarding the installation of insulation, stating:

> In December 2000, FTC staff issued a public letter stating that averaging insulation depths to determine R-Value violates FTC regulations, including 16 C.F.R. § 460.1, *et seq.* This December 2000 letter stated that FTC regulations require "the installation of loose-fill insulation at or above the required minimum settled thickness at every location" and that the "minimum thickness labeling requirement. . . [does not] provide[] loose-fill installers with the discretion to leave some areas at less than minimum settled thickness and then average the overall thickness as a means to yield the appropriate R-Value."

(DE 17-2, Class-Action Complaint, ¶ 22, CM-ECF p. 28.)

This is the very basis for CMH's claim against GreenFiber. The Amended Complaint states the date the class-action complaint was filed. Because the

5

Amended Complaint references the class-action complaint and CMH attached it to its response (DE 17-2), the court may consider its contents on a motion to dismiss. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680–81 (6th Cir.2011).

Further, the Court has assumed the truth of CMH's allegation in its Amended Complaint that, after the class-action complaint was filed, GreenFiber "continued to affirmatively assert to [CMH] on numerous occasions that [GreenFiber's] representations to [CMH] regarding the instructions for the installation of [GreenFiber's] product were truthful and accurate." (DE 11, Amended Complaint, ¶ 28.) Regardless, with reasonable care and diligence, CMH should have discovered any cause of action against GreenFiber soon after receiving the class-action complaint, which explicitly set forth the FTC's requirements and the basis for this action against GreenFiber.

Neither in its response to the motion to dismiss nor in its motion to reconsider does CMH allege any reason for the delay, other than GreenFiber's insistence that its instructions accurately conveyed the FTC's requirements. That response is insufficient in this case and requires no further discovery. The class-action complaint explicitly states the FTC's requirements. "The general principle outlined in . . . laches cases provides that, in the absence of unusual circumstances, a suit will not be barred before the analogous statute has run but will be barred after the statutory time has run." *Tandy Corp. v. Malone & Hyde, Inc.*, 769 F.2d 362, 365 (6th Cir. 1985).

Accordingly, CMH's Lanham Act claim is barred under the doctrine of laches. *See LinkCo, Inc v. Akikusa*, 615 F. Supp. 2d 130, 142 (S.D.N.Y. 2009) (stating "the defense of laches may be resolved on a motion to dismiss where it is clear on the face of the Complaint that the plaintiff can prove no set of facts to avoid the insuperable

6

bar."), aff'd 367 F. App'x 180 (2nd Cir. 2010); *Lutz v. Chesapeake Appalachia, LLC*, 717 F.3d 459, 464 (6th Cir. 2013) (stating that dismissal on statute-of-limitations grounds is warranted "if the allegations in the complaint affirmatively show that the claim is time-barred.")

Similarly, CMH's fraud claims are barred by Tennessee's three-year statute of limitations. CMH had reason to know of its injury by October 31, 2008. It did not bring this action until June 8, 2012. In its motion to reconsider, CMH argues that the Court should have considered whether "equitable estoppel tolled the statute of limitations." (DE 43, Mem. at CM-ECF p. 21.) In its response to the motion to dismiss, CMH argued only that the limitations period for its state-law fraud claims should be tolled under the discovery rule. (DE 17, Response at CM-ECF p. 19.) It argued that the discovery rule applied because GreenFiber executives continued to insist after the filing of the class-action complaint that its instructions regarding the FTC requirements regarding the installation of insulation were accurate. (DE 17, Response at CM-ECF pp. 19-20.)

The Court addressed this argument in its opinion and, again, determined that the latest date that CMH had reason to know of its injury was the date the class-action complaint was filed against it, regardless of any misrepresentations by GreenFiber. In its motion to reconsider, CMH argues that it raised equitable estoppel in its response to the motion to dismiss when citing *Hill v. Dep't of Labor*, 65 F.3d 1331, 1335 (6th Cir. 1995) and *Jones v. General Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991). ( DE 43, Mem. at CM-ECF p. 20 citing DE 17, Response at CM-ECF p. 21.) Both of these cases deal with fraudulent concealment and CMH cited them for this purpose in its response to the motion to dismiss.

7

Nevertheless, the Court will address here whether GreenFiber should be equitably estopped from asserting a statute of limitation defense to the state-law fraud claims. For this argument, CMH cites *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436 (Tenn. 2012) which directs the court to look at 1) the defendant's conduct; 2) the reasonableness of the plaintiff's reliance on that conduct; and 3) whether the plaintiff acted diligently in pursuing its claims. *Id.* at 461.

Again, the Court has assumed that, after the filing of the class-action complaint, GreenFiber executives continued to insist that their instruction manual was accurate regarding the manner by which the FTC requires that insulation be installed. Nevertheless, it is clear from the face of the Amended Complaint, that CMH's reliance on those misrepresentations was not reasonable. The class-action complaint explicitly recited the FTC's requirements. At that point, with reasonable care and diligence, CMH should have become aware of its claim against GreenFiber.

### B. The contractual claims

CMH's claims for breach of contract, breach of warranty, and contractual indemnity were all based on the Warranty Agreement between the parties. The Court's ruling dismissing those claims was based on the plain language of the agreement and the allegations in CMH's complaint.

CMH alleges that GreenFiber misrepresented the manner by which its insulation must be installed to comply with FTC requirements. This kind of misrepresentation is simply not covered by the Warranty Agreement. In the agreement, GreenFiber warrants that the insulation "meets and is certified in accordance with third party inspection and will be free of defects in material or workmanship in accordance with manufacture warranty effective from the date of retail sold." GreenFiber further warrants that the insulation is "fit for the

8

particular purpose for which supplier understands Clayton has purchased said product." (DE 17-2, Warranty Agreement, CM-ECF p. 2.)

In its motion to reconsider, CMH argues that its breach of warranty claim is based on representations made by GreenFiber in some context other than the Warranty Agreement. CMH's breach of warranty claim is set forth in count IV of its Amended Complaint. Its breach of contract claim is set forth in count VII. They are substantially the same. The only warranties mentioned in count IV are the warranties contained in the Warranty Agreement. The only agreement mentioned in count VII is the Warranty Agreement.

In fact, count IV specifically recites the entire Warranty Agreement and states, "Defendant breached *these* warranties by falsely representing to Plaintiffs that using the average overall thickness as a means to yield the appropriate R-value is an appropriate means of determining conformace to the FTC's R-value Rule. . . . ." (DE 11, Amended Complaint ¶¶ 62-63.) Likewise, Count VII recites the entire Warranty Agreement and then states "Defendant breached *these* agreements." (DE 11, Amended Complaint ¶¶ 62-63.) Nowhere in either count, does CMH indicate that the contract or warranty claim is based on any agreements or warranties other than those contained in the Warranty Agreement. Nor did CMH mention any other warranty or agreement in its response to the motion to dismiss

Because, assuming the truth of all of CMH's allegations, GreenFiber did not breach the Warranty Agreement, the court dismissed the contractual claims.

C.  **Request to amend complaint**

In a footnote, CMH asks that the Court grant it leave to file a second amended complaint. The Court will deny this request. A motion is not properly made in a footnote. Further, CMH has already had an opportunity to amend its complaint

9

once in response to GreenFiber's first motion to dismiss. GreenFiber's second motion to dismiss has now been ruled upon. It is simply too late for CMH to amend its complaint again.

### III. Conclusion

For all these reasons and those stated in the Court's July 1, 2013 Opinion and Order, the Court hereby ORDERS that CMH's motion to reconsider (DE 39) is DENIED.

Dated this 24th day of March, 2014.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY